**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| HEXCELPACK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. <u>23-cv-15282</u> |
| | ) | |
| PREGIS LLC, | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

<u>**COMPLAINT**</u>

Plaintiff HexcelPack, LLC ("HexcelPack"), for its Complaint of patent infringement against Defendant Pregis LLC ("Pregis"), hereby alleges as follows:

<u>**Parties**</u>

1.      HexcelPack is a Connecticut limited liability company with its principal place of business located at 3190 W SR 89A, Suite 1000, Sedona, Arizona  86336.

2.      On information and belief, Pregis is a Delaware corporation with a principal place of business located at 2345 Waukegan Road, Bannockburn, Illinois  60015.

3.      The global headquarters for the Pregis family of companies is located at 227 W. Monroe Street, Chicago, Illinois  60606.

4.      The North America headquarters for the Pregis family of companies is located at 2345 Waukegan Road, Bannockburn, Illinois  60015.

<u>**Jurisdiction and Venue**</u>

5.      This is an action for patent infringement under 35 U.S.C. § 271 et seq. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.      The Court has personal jurisdiction over Pregis because Pregis is incorporated in and resides in this district, has a regular and established place of business in this district, and has committed acts of infringement in this district.  Further, Pregis is registered with the State of Illinois to transact business in Illinois and Pregis regularly transacts business in Illinois and in this judicial district, including making, using, offering to sell, and/or selling its infringing products here.

7.      Venue is proper in this judicial district under 28 U.S.C. 1400(b) because Pregis is incorporated in and resides in this district, has a regular and established place of business in this district, and has committed acts of infringement in this district.

**Patents-In-Suit**

8.       On September 18, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,760,548 ("the '548 Patent"), entitled "Extensible Paper and its Use in the Production of Expanded Slit Packaging Wrap and Void Fill Products," to inventor David Goodrich.  A true and accurate copy of the '548 patent is attached as Exhibit A.

9.      On October 25, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,479,009 ("the 009 Patent"), entitled "Slit Sheet Tensioning Device," to inventor David Goodrich.  A true and accurate copy of the '909 patent is attached as Exhibit B.

10.      On July 12, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,383,906 ("the 906 Patent"), entitled "Extensible Paper and its Use in the Production of Expanded Slit Packaging Wrap and Void Fill Products," to inventor David Goodrich.  A true and accurate copy of the '906 patent is attached as Exhibit C.

11.     On June 2, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,669,086 ("the 086 Patent"), entitled "Slit Sheet Tensioning Device," to inventor David Goodrich.  A true and accurate copy of the '086 Patent is attached as Exhibit D.

12.     HexcelPack is the owner by assignment of the '548, '009, '906, and '086 Patents (collectively the "Patents-In-Suit"), including all right to sue for past, present, and future infringement of the Patents-In-Suit.

## Facts Relating to the Patents-In-Suit

13.     The '548 Patent contains four independent claims and eighty-four dependent claims.

14.     The inventions claimed in the '548 Patent are generally directed to expanded slit sheet paper that is employed in packaging applications and the like.

15.     Independent claim 1 of the '548 Patent, which claims a slit sheet extensible paper cushioning product, follows:

Claim 1.  A slit sheet extensible paper cushioning product, comprising:

a slit sheet extensible paper having a slit pattern including a plurality of slits extending in a cross direction that form open cells upon expansion in a machine direction,

wherein extensibility of unslit extensible paper from which said slit sheet extensible paper is made is within a range from 4 to 20% in the machine direction.

16.     The '009 Patent contains two independent claims and forty-two dependent claims.

17.     The inventions claimed in the '009 Patent are generally directed to a tensioning device for resisting the unwinding of a roll of expandable slit sheet paper during the dispensing of the expanded slit sheet paper.

18.     Independent claim 2 of the '009 Patent, which claims a device for dispensing expandable slit sheet paper, follows:

Claim 2.  A device for dispensing expandable slit sheet paper, comprising:

a roll of expandable slit sheet paper,

an interior core member,

wherein said roll of expandable slit sheet paper is wound on said interior core member,

a rod member,

wherein said interior core member is mounted on said rod member, said rod member having a first rod member end region,

a support member,

said first rod member end region being secured to said support member,

said rod member having a second rod member end region at an opposite end of said rod member from said first rod member end region,

said rod member receiving an assembly of said interior core member with said slit sheet paper wound on said interior core member,

a pressing member that is movable to apply a frictional resistance that inhibits rotation of said core member, and a spring arranged to apply a spring force against said pressing member, and

further including a manually adjusted member that is arranged to apply a pressure against said spring such as to adjust the spring force applied by the spring against said pressing member.

19.     The '906 Patent contains six independent claims and eleven dependent claims.

20.     The inventions claimed in the '906 Patent are generally directed to expanded slit sheet paper that is employed in packaging applications and the like.

21.     Independent claim 1 and dependent claim 3 of the '906 patent, which claim extensible slit paper cushioning products, follow:

Claim 1.  An extensible slit sheet paper cushioning product, comprising:

A slit sheet paper having a slit pattern including a plurality of slits extending in a cross direction that forms open cells upon expansion in a machine direction,

said slit sheet paper further being extensible and having an extensible range, as measured in a pre-slit configuration, of 3 to 9% in the machine direction.

4

Claim 3.  The extensible slit sheet paper product of claim 1, wherein said extensible paper has an extensible range from 3-20% in the cross direction.

22.     The '086 Patent contains six independent claims and sixty-six dependent claims.

23.     The inventions claimed in the '086 Patent are generally directed to expanded slit sheet paper that is employed in packaging applications and the like.

24.     Independent claim 1 and dependent claim 7, which claim extensible slit sheet paper cushioning products, follow:

Claim 1.  An extensible slit sheet paper cushioning product, comprising:

a roll of slit sheet paper having a slit pattern including a plurality of slits extending in a cross direction that forms a plurality of open cells upon expansion in a machine direction, said roll resisting pulling of a length of slit sheet paper along the machine direction to enable expansion of the length of slit sheet paper in the machine direction,

said slit sheet paper being formed from an extensible paper made to be extensible in the machine direction and the cross direction without said slit pattern, said extensible paper having an extensibility within a range of 3 to 20% in the machine direction.

Claim 7.  The extensible slit sheet paper cushioning product of claim 1, wherein said extensibility is not less than 5% in both the machine direction and the cross direction.

**HexcelPack, Danco and Pregis**

25.     In 2017, HexcelPack and Danco Packaging Supply Co. ("Danco") executed a Confidentiality/Non-Compete Agreement to explore opportunities for Danco to supply a slit paper product sold under the trademark HexcelWrap™ to HexcelPack.

26.     Also in 2017 and in furtherance of the Confidentiality/Non-Compete Agreement, HexcelPack and Danco executed a Kraft Paper Supply Contract under which Danco supplied HexcelWrap™ slit paper to HexcelPack.

27.     Pursuant to the Kraft Paper Supply Contract, Danco cut rolls of paper stock down to a preferred width, typically 15.25 inches, and cut a slit pattern into the 15.25 inch paper so that

the paper would expand under tension. Danco acquired the die cutting equipment under the contract in order to cut the slit pattern.

28.     Pursuant to the Kraft Paper Supply Contract, HexcelPack would receive such 15.25 inch wide slit paper rolls from Danco and then HexcelPack would sell such slit paper to its customers for use in cushioning products during transportation and other packaging needs.

29.     Without advising HexcelPack, during the terms of both of the Kraft Paper Supply Contract and the Confidentiality/Non-Compete Agreement, the owners of Danco entered an agreement with Pregis in the summer of 2021 for Pregis to acquire Danco.

30.     Under a purchase order issued by HexcelPack to Danco in the amount of $150,000.00 dated August 10, 2021, HexcelPack bought the die cutting equipment from Danco that Danco had previously used to cut the slit pattern into the paper under the Kraft Paper Supply Contract. The purchase order also included Danco's inventory of any finished HexcelWrap™ slit paper as well as any inventory of raw paper stock used in making HexcelWrap™ slit paper.

31.     On August 26, 2021, David P. Goodrich of HexcelPack signed the cessation section of the Confidentiality/Non-Compete Agreement, along with waiving only the one-year confidentiality after cessation while retaining the one-year non-compete after cessation.

32.     Upon information and belief, without HexcelPack's knowledge, Danco doctored HexcelPack's purchase order, attempting to create a pretense that HexcelPack had waived the one-year non-compete after cessation under the Confidentiality/Non-Compete Agreement that contractually required Danco "not Compete with Hexcel[Pack] by making, or selling Hexcel[Pack]'s currently patent pending and/or patented products, to Hexcel[Pack]'s customers," This further evidences Danco's willfully planned infringement of the Patents-In-Suit.

33. Upon information and belief, although Danco ultimately delivered the die cutting equipment to HexcelPack under the purchase order, Danco withheld delivery to HexcelPack of inventory of finished HexcelWrap™ slit paper and raw paper stock as was required under the purchase order.

34. Upon information and belief, after Pregis acquired Danco, Pregis wrongfully offered and advertised to potential customers, including HexcelPack's major customers of HexcelWrap™ slit paper, the withheld inventory of the HexcelWrap™ slit paper, including withheld slit paper and/or withheld raw materials slit using specific die cutting equipment like that used by Danco under contract to manufacture HexcelWrap™ slit paper for HexcelPack and subject to purchase by HexcelPack under the purchase order of August 10, 2021.

35. Upon information and belief, Pregis also took photographs of the withheld inventory of HexcelWrap™ slit paper in various stages of use, including use during dispensing, product wrapping, and after a product had already been wrapped. Upon information and belief, Pregis wrongfully used those photographs of the withheld inventory of HexcelWrap™ slit paper by displaying them on the <u>Pregis</u> website and in advertising materials to sell the <u>Pregis</u> Accused Easypack®GeoTerra™ slit paper.

36. Pregis copied the HexcelWrap™ slit paper in making the Accused Easypack®GeoTerra™ slit paper. Pregis's use of photographs of the HexcelWrap™ slit paper to sell the Accused Easypack®GeoTerra™ slit paper further exacerbated such copying.

37. Upon information and belief, Pregis' intent to copy HexcelPack's HexcelWrap™ slit paper is further reflected in Pregis' offering of "Hexcel" paper to Walmart leading to and in response to Walmart's "2022 Walmart Hexcel Paper RFI and E-Auction."

7

**Pregis and the Accused Easypack® GeoTerra™ Slit Paper Product**

38.     Pregis is a global manufacturer and supplier of packaging and protective products with its corporate headquarters located in Chicago, Illinois.

39.     Pregis sells packaging products in the United States and around the world, including the Accused Easypack® GeoTerra™ slit paper product.

40.     Upon information and belief, Pregis does not manufacture the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product.  Rather, Pregis purchases such paper stock from one or more third party paper mills.

41.     Upon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is commonly known to be "extensible paper."

42.     Upon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is commonly known to have an extensibility of at least 5% to 6% in both the machine direction and the cross direction.

43.     Upon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is provided by the third party paper mill(s) with a specification sheet(s).  Upon further information and belief, such specification sheets recite a value for the extensibility of such paper stock in the machine direction where the recited value is greater than or equal to at least 5% to 6%.  Upon further information and belief, such specification sheets recite a value for the extensibility of such paper stock in the cross direction where the recited value is greater than or equal to at least 5% to 6%.

44.     Upon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is commonly known to have a weight of 50 pounds per 3,000 feet[2].

45. Upon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is provided by the third party paper mill(s) with a specification sheet(s). Upon further information and belief, such specification sheets recite a value for the weight of such paper stock where the recited value is 50 lb. / 3,000 ft$^2$.

46. Pregis advertises that the Accused Easypack® GeoTerra™ slit paper product weighs 50 lb. / 3,000 ft$^2$.

47. The factual contentions made above in Paragraphs 41 to 45, inclusive, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. HexcelPack has requested a sample from Pregis of the raw material used in making the Accused Easypack® GeoTerra™ slit paper product so that HexcelPack can run tests on the sample and confirm infringement of the patent claims identified herein. To date, Pregis has refused to provide such a sample. Based upon its own industry knowledge, HexcelPack is informed and believes that the product details asserted in Paragraphs 41 to 45 are accurate and that the Accused Easypack® GeoTerra™ slit paper product will be found to infringe the Patents-In-Suit.

48. The Accused Easypack® GeoTerra™ slit paper product is a paper-based packing solution which provides cushioning and interleaving protection as it nests within itself and locks products into place for transport in a shipping parcel, such as a box or envelope. Multiple adjacent layers of the expanded Accused Easypack® GeoTerra™ slit paper product may be wrapped around the product to allow the layers to interlock through contact and protect the product.

49. The Accused Easypack® GeoTerra™ slit paper product is extensible paper that has been slit to provide numerous slits aligned substantially in the cross direction. These slits are arranged so that, upon expansion by pulling the paper in the machine direction under tension, the slits expand into open hexagonal cells.

### **Pregis and the Accused Manual Dispenser**

50.     A photograph taken from Pregis's website purporting to depict the Accused Easypack® GeoTerra™ product, including both the Accused Easypack® GeoTerra™ expandable slit paper and the included Accused Manual Dispenser, follows:



51.     As stated in Pregis's marketing materials for the Accused Easypack® GeoTerra™ product, a "two-touch tensioning dispenser" for the Pregis Easypack® GeoTerra™ slit paper product is "included" as part of the purchase.

52.     Pregis's marketing materials further explain that the Accused Manual Dispenser for the Accused Easypack® GeoTerra™ product includes a handle that can be "turned clockwise to tighten the roll" of expandable packaging paper and increase tension.

53.     In general, the user of the Accused Manual Dispenser will want to increase tension on the roll of the Accused Easypack® GeoTerra™ expandable paper (loaded on the Accused Manual Dispenser) as the roll diameter gets smaller.

54.     A true and correct copy of the user manual for the Accused Manual Dispenser is attached hereto as Exhibit E.

10

55.     The use of the handle of the Accused Manual Dispenser is shown and explained in the following photographs taken from Exhibit E, the user manual for the accused "Pregis Easypack® GeoTerra™ Manual Dispenser":

**Increasing Tension / Paper Is Not Expanding**

If the paper is not expanding when pulled, then tension must be increased. Rotate the Adjustment Handle CLOCKWISE. Do not overtighten if excessive resistance is felt in the handle. If the handle is fully tightened and there is not enough tension in the paper, check the Troubleshooting guide below.



**Decreasing Tension / Paper Is Tearing**

If the paper is tearing when pulled, then tension must be decreased. Rotate the Adjustment Handle COUNTERCLOCKWISE.



56.     The Accused Manual Dispenser shows easy tension adjustment for quick pull, tear, and pack motion.  The handle that controls the friction assembly on one of the core plugs captures a spring that exerts pressure to increase the tension needed in the Accused Paper to unwind and expand the Accused Paper.  Rotating the handle clockwise tightens the roll, compresses the spring, and increases the tension.  Rotating the handle counterclockwise loosens the roll, decreases the

11

compression on the spring, and decreases the tension. Pregis instructs the user to so adjust the tension to obtain a "nice wide honeycomb" when wrapping a product.

57. The Accused Easypack® GeoTerra™ product includes an expandable slit paper that has a lattice structure that is activated when the packer pulls material from the Accused Manual Dispenser.

58. The Accused Easypack® GeoTerra™ product is provided with a roll of expandable slit paper that stretches and expands at the point of packaging as it is dispensed from the Accused Manual Dispenser.

59. The roll of expandable slit paper of the Accused Easypack® GeoTerra™ product is wound on an interior core member. The following photograph taken from the user manual for the Accused Manual Dispenser (Exhibit E) shows this interior core member after all of the expandable paper has been dispensed therefrom:



60. The interior core member of the roll of Accused Easypack® GeoTerra™ product is mounted on a rod member of the Accused Manual Dispenser as seen in the following photograph taken from the Pregis user manual (Exhibit E):

 

61. The lattice structure of the expandable slit paper of the Accused Easypack® GeoTerra™ product nests together to lock products into place and provides 6-sided protection that does not require added time or materials for taping. Multiple adjacent layers of expanded paper of the Accused Easypack® GeoTerra™ product may be wrapped around the object to allow the layers to interlock through contact and protect the object.

62. Pregis describes both the Accused Easypack® GeoTerra™ product and the infringing operation of the Accused Manual Dispenser in a video appearing at https://www.pregis.com/us-solutions/by-product/on-demand-paper-systems/cushioning--block--brace/geoterra/ ("the Video").

**Pregis Wrongfully Used Photographs of HexcelWrap™ to Sell Its Infringing Product**

63. Upon information and belief, Pregis wrongfully used photographs taken of HexcelPack's HexcelWrap™ slit paper to sell Pregis' infringing product in direct competition with HexcelPack.

64. A photograph recently taken from the Pregis website at https://www.pregis.com/us-solutions/by-product/on-demand-paper-systems/cushioning--block--brace/geoterra/ shows several products in a shipping box that have been wrapped in slit extensible paper:



Another photograph recently taken from the Pregis website at https://www.pregis.com/us-solutions/by-product/on-demand-paper-systems/cushioning--block--brace/geoterra/ shows a product being rolled up in slit extensible paper to protect it during shipping:



65.     Upon information and belief, the slit extensible paper shown in the above photographs from the recent Pregis website was <u>not</u> made or sourced by Pregis. Rather, upon information and belief, Pregis used wrongfully withheld inventory of HexcelPack's HexcelWrap™ slit paper in setting up and taking these photographs. Such improper use of HexcelPack's HexcelWrap™ slit paper by Pregis in the Pregis advertisements is wrongful and must stop.

66.     HexcelPack sent a demand letter to Pregis that Pregis stop using photographs of HexcelPack's HexcelWrap™ slit paper in Pregis advertisements and website photographs. Although Pregis thereafter promptly removed the above two offending photographs from its

website, it never acknowledged such action to HexcelPack nor did Pregis otherwise address this issue in its correspondence with HexcelPack.

67.     Upon information and belief, notwithstanding being caught improperly using photographs of HexcelPack's patented paper, Pregis continues improperly to use still other photographs of HexcelPack's HexcelWrap™ slit paper on Pregis's website and in its advertising literature.

68.     For example, here follow two photographs that Pregis continues to use on its website.  Upon information and belief, the slit extensible paper appearing in these photographs taken by Pregis is actually HexcelPack's patented HexcelWrap™ slit paper.

 

*See* Exhibit F, https://www.pregis.com/globalassets/resources/us/easypack-paper-packaging-systems/easypack-paper-packaging/easypack-paper-packaging.pdf at pages 4 and 6.

69.     As a further example, here follow two photographs that Pregis continues to use in its product literature.  Upon information and belief, the slit extensible paper appearing in these photographs taken by Pregis is actually HexcelPack's patented HexcelWrap™ slit paper.

 

*See* Exhibit G (Pregis Product Literature).

70.     Again, upon information   and belief, such improper use of HexcelPack's patented HexcelWrap™ slit paper by Pregis in photographs appearing on the Pregis website and in Pregis advertisements is wrongful and must stop.

**HexcelPack Has Suffered Significant Lost Profits Damages**

71.     HexcelPack and Pregis are direct competitors with many common customers for the extensible slit paper product covered by the Patents-In-Suit.

72.     Upon information and belief, Pregis has sold its Accused Easypack® GeoTerra™ product by wrongfully advertising it with photographs taken of the patented HexcelWrap™ slit paper.

73.     Upon information and belief, Pregis marketed withheld inventory of the patented HexcelWrap™ slit paper that it wrongfully obtained from Danco as if such product were actually the Accused Easypack® GeoTerra™ product.  In fact, upon information and belief, all such inventory was subject to HexcelPack's prior purchase order with Danco and it was wrongful for Pregis to take possession of it and market it.

74.     If Pregis had not made the sales of its Accused Easypack® GeoTerra™ product at all times since such sales began, then HexcelPack would have made some or all of those sales by filling them with the patented HexcelWrap™ slit paper.  HexcelPack has thus suffered lost profits

from these lost sales as a result of Pregis's infringement of the Patents-In-Suit in an amount to be determined at trial through fact and expert testimony.

75.     Pregis has sold its Accused Easypack® GeoTerra™ product at prices well below the prices that HexcelPack historically charged and received for the patented HexcelWrap™ slit paper.

76.     Such price pressure caused by Pregis's lower price structure required HexcelPack to lower the price it charges for the patented HexcelWrap™ slit paper in order to compete with the lower prices charged for the Accused Easypack® GeoTerra™ product.  HexcelPack has thus suffered price erosion as a result of Pregis's infringement of the Patents-In-Suit in an amount to be determined at trial through fact and expert testimony.

77.     Such price pressure caused by Pregis's lower price structure prevented HexcelPack from raising the price it charges for the patented HexcelWrap™ slit paper as it otherwise would have done had Pregis not exerted such price pressure.  HexcelPack has thus suffered price erosion as a result of Pregis's infringement of the Patents-In-Suit in an amount to be determined at trial through fact and expert testimony.

## COUNT I

### Infringement of the '548 Patent by Pregis

78.     HexcelPack alleges and incorporates by reference Paragraphs 1 to 77, above, as if fully set forth herein.

79.     Pregis has and continues to directly infringe at least claims 1, 2, 3, 10, 11, 21, 22, 27, 34, 35, 37, 38, 46, 60, 61, 63, 64 and 65 of the '548 Patent under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling the Easypack® GeoTerra™ product within the United States.  Pregis's direct infringement is immediate and ongoing.

17

80.     Pregis has and continues to induce its customers to directly infringe at least claims 1, 2, 3, 10, 11, 21, 22, 27, 34, 35, 37, 38, and 46 of the '548 Patent under 35 U.S.C. § 271 by inducing its customers to use the Easypack® GeoTerra™ product within the United States knowing that such acts constitute infringement of the '548 Patent.  Pregis also induces its customers to directly infringe at least claims 60, 61, 63, 64 and 65 of the '548 Patent under 35 U.S.C. § 271 by inducing its customers to use the Easypack® GeoTerra™ product to practice these method claims within the United States knowing that such acts constitute infringement of the '548 Patent.  As an example, the Video provided through the Pregis website directs and teaches Pregis customers how to use the Accused Manual Dispenser in an infringing manner to wrap and cushion products for shipment using the Easypack® GeoTerra™ slit paper product.  This direct infringement by customers of Pregis is immediate and ongoing.  This induced infringement caused by Pregis is immediate and ongoing.

81.     As a direct and proximate result of Pregis's acts of infringement and induced infringement, HexcelPack has suffered and continues to suffer damages and irreparable harm.

82.     Pregis's infringement of the '548 patent has damaged and will continue to damage HexcelPack, including but not limited to, lost profits from lost sales, lost market share, lost income from competition from infringing products, lost opportunity for sales, price erosion because HexcelPack has had to lower the price of its own HexcelWrap™ slit paper to meet Pregis's infringing competition, and/or price erosion because HexcelPack has not been able to raise the price of its own HexcelWrap™ slit paper because of Pregis's infringing competition.

83.     In committing these acts of direct and indirect infringement, Pregis acted despite an objectively high likelihood that its actions constituted infringement of at least one valid and

enforceable claim of the '548 Patent, and Pregis knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid claim of the '548 patent.

84.     Pregis's infringement of the '548 patent has been knowing and willful.

85.     As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and will continue to suffer damages, lost market share, price erosion and other irreparable injury.

86.     HexcelPack has no adequate remedy at law for Pregis's acts of infringement and unless Pregis's acts of infringement are enjoined, HexcelPack will continue to be damaged and suffer irreparable harm.

## COUNT II

## Infringement of the '009 Patent by Pregis

87.     HexcelPack alleges and incorporates by reference Paragraphs 1 to 86, above, as if fully set forth herein.

88.     Pregis has and continues to directly infringe at least claims 2, 15, and 19 to 23 of the '009 Patent under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling its dispenser for the Easypack® GeoTerra™ product within the United States.  Pregis's direct infringement is immediate and ongoing.

89.     As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and continues to suffer damages and irreparable harm.

90.     Pregis's infringement of the '009 patent has damaged and will continue to damage HexcelPack, including but not limited to, lost profits from lost sales, lost market share, lost income from competition from infringing products, lost opportunity for sales, price erosion because HexcelPack has had to lower the price of its own HexcelWrap™ slit paper to meet Pregis's

infringing competition, and/or price erosion because HexcelPack has not been able to raise the price of its own HexcelWrap™ slit paper because of Pregis's infringing competition.

91.     In committing these acts of direct infringement, Pregis acted despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '009 Patent, and Pregis knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid claim of the '009 patent.

92.     Pregis's infringement of the '009 patent has been knowing and willful.

93.     As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and will continue to suffer damages, lost market share, price erosion and other irreparable injury.

94.     HexcelPack has no adequate remedy at law for Pregis's acts of infringement and unless Pregis's acts of infringement are enjoined, HexcelPack will continue to be damaged and suffer irreparable harm.

## COUNT III

### Infringement of the '906 Patent by Pregis

95.     HexcelPack alleges and incorporates by reference Paragraphs 1 to 94, above, as if fully set forth herein.

96.     Pregis has and continues to directly infringe at least claims 1, 3, 4, 6, 7, 9, 10, 11, and 12 of the '906 Patent under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling the Easypack® GeoTerra™ product within the United States.  Pregis's direct infringement is immediate and ongoing.

97.     Pregis has and continues to induce its customers to directly infringe at least claims 1, 3, 4, and 6 of the '906 Patent under 35 U.S.C. § 271 by inducing its customers to use the

20

Easypack® GeoTerra™ product within the United States knowing that such acts constitute infringement of the '906 Patent. Pregis also induces its customers to directly infringe at least claims 7, 9, 10, 11, and 12 of the '906 Patent under 35 U.S.C. § 271 by inducing its customers to use the Easypack® GeoTerra™ product to practice these method claims within the United States knowing that such acts constitute infringement of the '906 Patent. As an example, the Video provided through the Pregis website directs and teaches Pregis customers how to use the Accused Manual Dispenser in an infringing manner to wrap and cushion products for shipment using the Easypack® GeoTerra™ slit paper product. This direct infringement by customers of Pregis is immediate and ongoing. This induced infringement caused by Pregis is immediate and ongoing.

98.     As a direct and proximate result of Pregis's acts of infringement and induced infringement, HexcelPack has suffered and continues to suffer damages and irreparable harm.

99.     Pregis's infringement of the '906 patent has damaged and will continue to damage HexcelPack, including but not limited to, lost profits from lost sales, lost market share, lost income from competition from infringing products, lost opportunity for sales, price erosion because HexcelPack has had to lower the price of its own HexcelWrap™ slit paper to meet Pregis's infringing competition, and/or price erosion because HexcelPack has not been able to raise the price of its own HexcelWrap™ slit paper because of Pregis's infringing competition.

100.     In committing these acts of direct and indirect infringement, Pregis acted despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '906 Patent, and Pregis knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid claim of the '906 patent.

101.     Pregis's infringement of the '906 patent has been knowing and willful.

102.    As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and will continue to suffer damages, lost market share, price erosion and other irreparable injury.

103.    HexcelPack has no adequate remedy at law for Pregis's acts of infringement and unless Pregis's acts of infringement are enjoined, HexcelPack will continue to be damaged and suffer irreparable harm.

## COUNT IV

### Infringement of the '086 Patent by Pregis

104.    HexcelPack alleges and incorporates by reference Paragraphs 1 to 103, above, as if fully set forth herein.

105.    Pregis has and continues to directly infringe at least claims 1, 7, 18, and 21 of the '086 Patent under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling the Easypack® GeoTerra™ product within the United States.   Pregis's direct infringement is immediate and ongoing.

106.    As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and continues to suffer damages and irreparable harm.

107.    Pregis's infringement of the '086 patent has damaged and will continue to damage HexcelPack, including but not limited to, lost profits from lost sales, lost market share, lost income from competition from infringing products, lost opportunity for sales, price erosion because HexcelPack has had to lower the price of its own HexcelWrap™ slit paper to meet Pregis's infringing competition, and/or price erosion because HexcelPack has not been able to raise the price of its own HexcelWrap™ slit paper because of Pregis's infringing competition.

108.   In committing these acts of direct, Pregis acted despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '086 Patent, and Pregis knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid claim of the '086 patent.

109.   Pregis's infringement of the '086 patent has been knowing and willful.

110.   As a direct and proximate result of Pregis's acts of infringement, HexcelPack has suffered and will continue to suffer damages, lost market share, price erosion and other irreparable injury.

111.   HexcelPack has no adequate remedy at law for Pregis's acts of infringement and unless Pregis's acts of infringement are enjoined, HexcelPack will continue to be damaged and suffer irreparable harm.

### Jury Demand

Under Rule 38(b) of the Federal Rules of Civil Procedure, HexcelPack demands a trial by jury of all issues triable to a jury.

### Prayer for Relief

WHEREFORE, HexcelPack respectfully requests that the Court enter judgment against Pregis and respectfully prays that the Court enter an order:

A. Finding that Pregis has directly and indirectly infringed one or more claims of the '548 Patent, the '009 Patent, the '096 Patent, and the '086 Patent under 35 U.S.C. § 271(a) & (b);

B. Enjoining Pregis and its officers, agents, servants, employees, and representatives, and all others in active concert or participation with it, from further infringing the '548 Patent, the '009 Patent, the '096 Patent, and the '086 Patent and from any further manufacture, use, importation, offer for sale, and sale of the infringing Easypack® GeoTerra™ product;

23

C.      Awarding damages to HexcelPack to compensate HexcelPack under 35 U.S.C. §

284 for Pregis's ongoing infringement of the '548 Patent, the '009 Patent, the '096 Patent, and the

'086 Patent, including compensating HexcelPack for its lost profits and price erosion resulting

from Pregis's infringement, and compensating HexcelPack for no less than a reasonable royalty;

D.      Finding that Pregis's infringement of the '548 Patent, the '009 Patent, the '096

Patent, and the '086 Patent has been willful;

E.      Trebling the damage award under 35 U.S.C. § 284;

F.      Finding this to be an exceptional case under 35 U.S.C. § 285 and awarding

HexcelPack its reasonable attorney fees and expenses in this action;

G.      Awarding HexcelPack pre-judgment and post-judgment interest;

H.      Awarding HexcelPack its costs in this action; and

I.      Awarding such other and further relief as the Court deems just and proper.


DATED: October 24, 2023              /s/ *Aaron R. Feigelson*
                                     John B. Conklin (IL Bar No. 6184670)
                                     Aaron R. Feigelson (IL Bar No. 6279091)
                                     LEYDIG, VOIT & MAYER, LTD.
                                     Two Prudential Plaza
                                     180 N. Stetson Avenue, Suite 4900
                                     Chicago, Illinois  60601
                                     312-616-5600
                                     jconklin@leydig.com
                                     afeigelson@leydig.com

                                     LEWIS RICE LLC
                                     Robert M. Evans, Jr. (*pro hac vice pending*)
                                     Michael J. Hartley (*pro hac vice pending*)
                                     600 Washington Avenue, Suite 2500
                                     St. Louis, Missouri  63101
                                     314-444-7784
                                     revans@lewisrice.com
                                     mhartley@lewisrice.com