**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HEXCELPACK, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No.  23 C 15282 |
| v. | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| PREGIS LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff HexcelPack, LLC holds several patents related to its paper packaging products and a manual dispenser for these products.  In 2021, Defendant Pregis LLC acquired HexcelPack's former supplier Danco and—HexcelPack alleges—copied the leftover inventory of finished product and raw materials in Danco's possession to make and sell competing products. HexcelPack now sues Pregis for infringing four of its patents and for inducing its customers to do the same.  Pregis has moved to dismiss HexcelPack's suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons stated below, the motion is denied.

## BACKGROUND

The facts alleged in Plaintiff's complaint are accepted as true for purposes of this motion. Plaintiff is an Arizona-based company that sells paper products for use in wrapping items during transportation and shipping, including its trademarked HexcelWrap™ product.  (Compl. [1] ¶¶ 1, 25, 28.)  HexcelWrap™ is a roll of flat paper that is cut with regularly spaced slits; when placed under tension, these slits expand into three-dimensional cells that provide cushioning for packaged materials.  (*Id.* ¶¶ 26–28.)  Plaintiff's website describes its product as "an updated version of a 30-year-old technology" that offers a more environmentally sustainable, biodegradable alternative to bubble wrap.  *Why HexcelPack*, HexcelPack, https://www.hexcelpack.com/why-hexcelpack/company-history (last visited Apr. 29, 2024).

Plaintiff is the owner by assignment of the four patents at issue in this case: U.S. Patent Nos. 11,760,548 (the "'548 patent"), 11,479,009 (the "'009 patent"), 11,383,906 (the "'906 patent"), and 10,669,086 (the "'086 patent"). (*Id.* ¶¶ 8–12.) All four were issued between 2020 and 2023 to inventor David Goodrich and are currently in effect. (*Id.*) The '086 patent, of which the '548 and '906 Patents are continuations, is "generally directed to expanded slit sheet paper that is employed in packaging applications and the like." (*Id.* ¶¶ 23; *see* Compl. Exs. A, C, D.) The key innovation that the '086 patent and its continuations claim over the prior art is not the "expandable" slit-sheet format itself, but the use of a special form of paper with stretchable qualities, known as "extensible paper," in combination with this format. (*See* Compl. Ex. D at 10.) The '548, '906, and '086 patents together contain more than a hundred independent and dependent claims for various embodiments of this extensible slit-sheet paper product, as well as for methods of using this product to wrap objects for shipment. (Compl. ¶¶ 13, 19, 22.)

The remaining patent (the '009 patent) describes a separate dispensing device from which a user can unwind large rolls of expandable, extensible slit-sheet paper for wrapping and packaging goods. (*Id.* ¶ 17.) The dispenser includes a "tensioning device" that creates resistance as the user unwinds the roll, so that the paper can be expanded as it is pulled outward. (Compl. Ex. B at 2.) The '009 patent contains two independent claims and forty-two dependent claims. (Compl. ¶ 16.)

In 2017, Plaintiff entered into an agreement with Danco Packaging Supply Co. ("Danco") to "explore opportunities" for Danco to manufacture and supply HexcelWrap™ paper produced pursuant to Plaintiff's patents. (*Id.* ¶ 25.) The agreement contained a confidentiality provision, as well as a noncompete provision preventing Danco from "[c]ompet[ing] with Hexcel[Pack] by making, or selling Hexcel[Pack]'s currently patent pending and/or patented products, to Hexcel[Pack]'s customers"; both provisions were effective for a one-year term after cessation of the agreement. (*Id.* ¶ 32.) That same year, Plaintiff and Danco moved forward with their deal by executing a separate supply contract, pursuant to which Danco would produce and supply Plaintiff

2

with HexcelWrap™ paper. (*Id.* ¶ 26.) Danco acquired specially designed die-cutting equipment under the terms of this contract in order to manufacture the slit paper in accordance with Plaintiff's specifications. (*Id.* ¶ 27.) In the summer of 2021, while both of these agreements were still in effect, the owners of Danco finalized an agreement with Defendant Pregis—a global packaging company headquartered in Illinois—for Pregis to acquire Danco. (*Id.* ¶¶ 2–4, 29, 38.) Plaintiff was not apprised of this deal in advance and the complaint does not say when Plaintiff learned of it, but in August 2021, HexcelPack issued a purchase order to Danco to buy the equipment Danco had used to manufacture the HexcelWrap™, plus any outstanding inventory of finished product and raw materials. (*Id.* ¶¶ 29, 30.) Plaintiff also signed the "cessation section" of its confidentiality and noncompete agreement with Danco (presumably, a clause to end the agreement early), and waived the one-year extension of the confidentiality provision after cessation.[1] (*Id.* ¶ 31.) It is not fully apparent whether Danco could have refused Plaintiff's purchase order (the exact terms of its agreements with Plaintiff are not in the record), but it appears in any event that Danco accepted it through partial performance by delivering the special die-cutting equipment used to manufacture Plaintiff's patented products. (*Id.* ¶ 33.) Plaintiff alleges, however, that Danco "doctored" the purchase order to make it appear that Plaintiff had also waived the one-year noncompete provision after cessation, and that Danco withheld delivery of the finished slit paper and raw materials. (*Id.* ¶ 32–33.)

Plaintiff alleges that Danco's new owner Pregis subsequently drew on these withheld materials to manufacture its own expandable paper packaging product branded as Easypack® GeoTerra™—a copy of Plaintiff's HexcelWrap™ product in direct infringement of Plaintiff's patents. (*Id.* ¶¶ 33, 36.) Evidence of copying, HexcelPack alleges, includes the facts that Pregis not only sold the withheld inventory of HexcelWrap™ directly to its own customers, but advertised

---

[1] Precisely why Plaintiff broke off its relationship with Danco in light of the sale to Pregis is not specified in the complaint.

its Easypack® GeoTerra™ product on its website using photos of the HexcelWrap™. (*Id.* ¶¶ 34–36.) Plaintiff further claims that Pregis copied its patented design for a manual dispenser to be used in conjunction with the expandable paper products. (*Id.* ¶ 50.)

Plaintiff filed this action in October 2023, asserting four counts of infringement under 35 U.S.C. § 271 for the '548, '009, '906, and '086 patents. (*Id.* ¶¶ 78–111.) It sought a declaration of infringement from this court, an injunction against further infringing activity, and damages plus reasonable attorneys' fees and costs. (*Id.* at pp. 23–24.) Defendant's motion to dismiss [17] ("Def.'s Mot.") is now before the court.

## LEGAL STANDARD

On a motion to dismiss a patent infringement case, Federal Circuit law governs the substantive elements of Plaintiff's patent claims, but the law of this Circuit controls the procedural standards otherwise applicable to the motion. *Michigan Motor Techs., LLC v. Bayerische Motoren Werke AG*, No. 22 CV 3804, 2023 WL 4683428, at *2 (N.D. Ill. July 21, 2023). A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *Berkeley*IEOR v. Teradata Operations, Inc.*, 448 F. Supp. 3d 864, 869 (N.D. Ill. 2020) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)). The complaint must contain "sufficient factual matter" to state a "facially plausible claim to relief," with all well-pleaded allegations accepted as true and all reasonable inferences drawn in the plaintiff's favor. *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450, 454 (N.D. Ill. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard is not high: the defendant must only be given "'fair notice' of the claim 'and the grounds upon which it rests.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court's review is generally limited to the scope of the complaint plus any documents that are attached as exhibits or incorporated by reference, as well as information properly subject to judicial notice. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

**DISCUSSION**

**I.       The '548, '906, and '086 Patents**

Counts I, III, and IV of Plaintiff's complaint assert both direct and indirect infringement of

Plaintiff's patents related to expandable slit-sheet packaging made with extensible paper.  Plaintiff

alleges that Defendant not only directly infringed the '548, '906, and '086 patents by making and

selling the Easypack® GeoTerra™ product, but also induced its customers to infringe the '548

and '906 patents by using the product with knowledge of its infringing status.[2]

Under 35 U.S.C. § 271(a), any person who "without authority makes, uses, offers to sell,

or sells any patented invention, within the United States" infringes the patent.  In addition,

35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable

as an infringer."  In evaluating a claim of infringement, a court first construes the scope of the

asserted claims and then compares them to the accused product.  *TechSearch, LLC v. Intel Corp.*,

286 F.3d 1360, 1371 (Fed. Cir. 2002).  An accused product must meet every limitation of an

asserted claim, either literally or under the doctrine of equivalents, to infringe.  *Id*.  At the pleading

stage, the "level of detail" required to make out a claim of direct infringement "will vary depending

upon a number of factors, including the complexity of the technology, the materiality of any given

element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  *Bot*

*M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)

Defendant's central argument for dismissal of the complaint is the assertion that the

Easypack® GeoTerra™ product does not infringe Plaintiff's patents—either directly or indirectly—

because it is not made from "extensible" paper.  Recall that the key improvement the '086 patent

---

[2]       Plaintiff also alleges indirect infringement of several method claims in the '548 and
'906 Patents related to the technique of wrapping objects in extensible slit-sheet paper for
shipment.  (*See* Compl. ¶¶ 80, 97.)  Specifically, Plaintiff points to a video "provided through the
Pregis website [that] directs and teaches Pregis customers how to use the Accused Manual
Dispenser in an infringing manner to wrap and cushion products for shipment using the
Easypack® GeoTerra™ slit paper product."  (*Id.*)

and its progeny claimed over the prior art was not the expandable slit-sheet format itself, but the *combination* of this format with a special type of paper that "substantially reduces [the] pulling force necessary to expand the expanded slit material." (Compl. Ex. D. at 10.) Thus, by their very nature, Plaintiff's patents are limited to paper that is *extensible* as well as *expandable*—and it is undisputed (at least for purposes of this motion) that these two limitations are present in all of the asserted claims.

To this effect, Plaintiff's complaint alleges that "[u]pon information and belief, the paper stock used to make the Accused Easypack® GeoTerra™ slit paper product is commonly known to be 'extensible paper.'" (*Id.* ¶ 41.) Plaintiff contends that this assertion will "likely have evidentiary support after a reasonable opportunity for further investigation or discovery," and that it "has requested a sample from Pregis of the raw material" used to make the accused product for testing, which Pregis has allegedly refused to provide. (*Id.* ¶ 47.) Defendant, however, counters in its motion that it "does not use 'extensible paper' in the manufacture of the accused slit paper but instead uses plain kraft paper" which has "not undergone any of the additional processing steps that make a paper 'extensible.'"[3] (Def.'s Mot. at 8.) It claims that Plaintiff could easily have discovered this fact through "proper pre-suit investigation," since Plaintiff "acknowledge[s] [it] possess[es]" a sample of the finished Easypack® GeoTerra™ product and Defendant had "expressly informed" Plaintiff the product was not made from extensible paper before the complaint's filing. (*Id.* at 8–9.) Thus, Defendant argues, Plaintiff's claims made solely "upon information and belief" fail to state a plausible claim for relief.

These arguments, however, go to facts outside the pleadings. At the motion-to-dismiss stage, Plaintiff is not required to prove its infringement claims or provide the kind of evidentiary

---

[3]     Kraft paper is "a strong paper or cardboard made from wood pulp produced from wood chips boiled in an alkaline solution containing sodium sulfate." *Kraft*, Merriam-Webster Online Dictionary (Apr. 29, 2024), https://www.merriam-webster.com/dictionary/kraft. The '548, '906, and '086 patents consistently define "extensible paper" in opposition to "standard, non-extensible Kraft paper." (Compl. Ex. A at 12; *see* Compl. Ex. C at 12, Ex. D at 11.)

support that would be required at summary judgment. *Motorola Sols., Inc.*, 402 F. Supp. 3d at 457 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). And contrary to Defendant's assertions, "allegations made on information and belief are perfectly acceptable at the pleading stage" if supported by sufficient detail. *Dresser, LLC v. VRG Controls, LLC*, No. 18 C 1957, 2018 WL 10426611, at *2 n.3 (N.D. Ill. Nov. 28, 2018).[4]

Plaintiff has provided the requisite detail here. Its complaint specifically alleges that Defendant uses paper stock "with an extensibility of at least 5% to 6% in both the machine direction and the cross direction," based on product specification sheets from its third-party suppliers.[5] (*Id.* ¶¶ 41–43.) The complaint further asserts that this paper stock is listed on the specification sheets as weighing 50 pounds per 3,000 square feet—and that Pregis advertises the EasyPack® GeoTerra™ paper as having the same weight. (*Id.* ¶ 46.) These allegations suggest that Plaintiff has engaged in enough pre-suit investigation to have "good reason to believe" Defendant's product is indeed made from extensible paper, even if it "may need discovery, formal or informal," to confirm this belief. *Dresser*, 2018 WL 10426611, at *2 n.3; *EZ STAK, LLC v. Dejana Truck & Util. Equip. Co., LLC*, No. 17 C 8742, 2018 WL 2933603, at *3 (N.D. Ill. June 12, 2018) ("Because [counterclaimant] has not yet had the benefit of discovery, it cannot be expected to have fully developed its evidence of [the] actual infringing products"). And

---

[4] Defendant asserts that in a later opinion issued on July 16, 2019, the *Dresser* court reached the exact opposite conclusion (i.e., that allegations made "on information and belief" are insufficient). The court has been unable to locate any such opinion. Defendant claims the *Dresser* court relied on *In re Papst Licensing GMBH & Co. KG Litigation*, 602 F. Supp. 2d 17 (D.D.C. 2009), with respect to pleading requirements, but that ruling is not binding here. In any event, *Papst* held only that a bare allegation "upon information and belief" that a defendant had "infringed the Patents in Suit," without any additional factual detail, failed to state a sufficiently plausible claim for relief. *Id.* at 19–20. As set forth above, Plaintiff's complaint has provided this necessary factual texture.

[5] Plaintiff does not specify who these suppliers are, and describes the information contained in their spec sheets "upon information and belief"; it is not clear whether these documents are publicly available or—if not—how Plaintiff obtained them. (Compl. ¶ 43.) The spec sheets themselves are not attached to the complaint or otherwise in the record.

whether Plaintiff could easily have made this determination without such discovery—as Defendant contends—is itself a disputed factual question that cannot be answered from the pleadings alone.[6]

The court notes, in addition, that even if Defendant's own assertions concerning its product are taken as true, determining whether those assertions implicate the limitation of "extensible paper" requires interpreting what that term means within the patents-in-suit—a question of claim construction that is ordinarily "not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018). In general, courts should give all claim terms their "broadest possible construction" at the motion-to-dismiss stage and reserve rulings on their meaning for a later *Markman* hearing. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012). Defendant argues that the paper it produces has not "undergone any of the additional processing steps to increase its stretch" that would make it "extensible" as that term is commonly understood in the paper-manufacturing industry. (Def.'s Mot. at 8.) But the '548, '906, and '086 patents define "extensible" paper only as "a paper sheet that is able to stretch in a longitudinal direction of the paper sheet upon applying a force in the longitudinal direction of the paper sheet." (Compl. Ex. A at 12, Ex. C at 12, Ex. D at 11.) While the patents also list processes used to manufacture this extensible paper, it is not fully clear at this stage whether they *require* these or any such processes to be used. (*See id.*)

Thus, whether or not Defendant's paper is "extensible" within the meaning of the patents-in-suit depends on several antecedent questions that cannot be resolved at this stage. If Defendant's product is indeed made of "regular," non-stretchable paper that would not meet any reasonable definition of "extensibility," it should be simple enough to provide Plaintiff with its

---

[6]    Defendant argues that discovery should not be necessary since Plaintiff already has a sample of the accused slit paper "in its final configuration" and "it is easy to confirm . . . without samples of the 'raw material'" that it is not extensible. (Def.'s Mot. at 9–10.) But even if Plaintiff does possess such a sample, the court has no way of confirming whether it can be tested as easily as Defendant claims. The disputed patents' specifications, for instance, note that "the stretching of an extensible paper must be measured in an unslit sheet of paper." (Compl. Ex. A at 12, Ex. C at 12, Ex. D at 11.)

requested sample of raw material so that Plaintiff can determine whether its claims in fact lack merit. For now, the court denies Defendant's motion to dismiss Plaintiff's Counts I, III, and IV for infringement of the '548, '906, and '086 patents.

## II.      The '009 Patent

Count II of Plaintiff's complaint alleges that Defendant has directly infringed "at least claims 2, 15, and 19 to 23" of the '009 patent by making and selling its manual dispenser for extensible slit-sheet paper. (Compl. ¶ 88.) Claim 2 of the '009 patent is an independent claim upon which dependent claims 15 and 19 to 23 are based. It reads as follows:

> Claim 2. A device for dispensing expandable slit sheet paper, comprising:
> a roll of expandable slit sheet paper,
> an interior core member,
> wherein said roll of expandable slit sheet paper is wound on said interior core member,
> a rod member,
> wherein said interior core member is mounted on said rod member, said rod member having a first rod member end region,
> a support member,
> said first rod member end region being secured to said support member,
> said rod member having a second rod member end region at an opposite end of said rod member from said first rod member end region,
> said rod member receiving an assembly of said interior core member with said slit sheet paper wound on said interior core member,
> a pressing member that is movable to apply a frictional resistance that inhibits rotation of said core member, and a spring arranged to apply a spring force against said pressing member, and
> further including a manually adjusted member that is arranged to apply a pressure against said spring such as to adjust the spring force applied by the spring against said pressing member.

(Compl. Ex. B at 14.) Below are two figures from the '009 Patent illustrating one embodiment of this device:

9



(*Id.* at 4.)

Plaintiff's complaint includes several images of the accused dispenser that appear on Pregis's website and in its user manual, including the following:



(*Id.* pp. 10–13.) The complaint also attaches as exhibits the accused dispenser's user manual (Ex. E) and Pregis's marketing materials. (Compl. Exs. E, F.) It recites several descriptions from these documents of the dispenser's basic functionality: in a nutshell, the user mounts a roll of paper on the dispenser by inserting two plastic handles on either end and manually unwinds it by tugging on the end of the roll, adjusting the amount of resistance by twisting one of the two handles on the side of the device, which is connected to a spring. (Compl. ¶¶ 51–62.)

Defendant argues that these allegations and attached materials flunk the *Twombly* and *Iqbal* pleading standard. Pregis faults Plaintiff for failing to include a general allegation that the

accused dispenser meets every element of any claim in the '009 Patent.  Further, Defendant points out, Plaintiff has not provided a claim chart matching each of the asserted claims' elements to corresponding features of the accused dispenser, or annotated its photos to show how these elements are present.  Finally, Defendant notes that the complaint contains no mention whatsoever of many of Claim 2's elements—including a "support member," "rod end member," "pressing member," "spring that is arranged to apply a spring force against said pressing member," or "manually adjusted member"—much less show how these elements are present in its accused product.

Defendant overstates the pleading standard, however.  "To state a claim for direct infringement . . . it is not necessary for a complaint to specifically allege how every limitation of each asserted claim is present in each accused product."  *Dresser*, 2018 WL 10426611, at *2.  In other words, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352.  This is particularly true where, as here, the "complexity of the technology" is relatively low.  *Id.* at 1353; *see Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 798 (N.D. Ill. 2020). The Federal Circuit held in *Disc Disease Solutions, Inc. v. VGH Solutions, Inc.* that a complaint for infringement of a "simple technology" which (1) named the allegedly infringing products, (2) attached photos of them, and (3) made a general allegation that they met every element of "at least one claim" of the asserted patents was sufficient to pass muster.  888 F.3d 1256, 1260 (Fed. Cir. 2018).

Here, "Plaintiff's complaint specifically identifies the accused product by its name and includes photographs of the product."  *Liqui-Box*, 449 F. Supp. 3d at 798.[7]  While it is true that Plaintiff does not include a blanket allegation that the dispenser meets "each and every element"

---

[7] Defendant cites this court's prior holding in *Liqui-Box* declining to dismiss a complaint with a claim chart and "photographs annotated with arrows showing which part of the [accused product] is described by the claim and corresponds to each claim limitation."  449 F. Supp. 3d at 798.  Plaintiff's complaint here lacks this level of detail and, Defendant argues, must therefore be dismissed.  Detailed information may well be helpful, and was helpful in *Liqui-Box*; but the court did not conclude that any complaint lacking these details must be dismissed.

of the asserted claim, as was present in *Disc Disease*, 888 F.3d at 1258, its allegation in Count II

that Defendant "has and continues to directly infringe" the '009 Patent—in combination with the

related factual details and images earlier in the complaint—is enough to get this point across.

(Compl. ¶¶ 52–60, 88.)  And though the complaint does not match every element in the asserted

claim to a corresponding part of the accused product, it does do this for several elements.  For

example, Paragraphs 59 and 60 of the complaint identify an "interior core member"—the brown

paper tube—in the below left photograph taken from the dispenser's manual, and allege that it is

"mounted on a rod member" as shown in the center and right photographs.  (Compl. ¶¶ 59–60.)

These illustrative comparisons are sufficient to "place [Defendant] … on notice of what activity …

is being accused of infringement."  *Nalco*, 883 F.3d at 1350 (quoting *K-Tech Telecomms., Inc. v.*

*Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).



 

In denying Defendant's motion, the court cautions that it is indeed not obvious that the

challenged elements (and others) of Claim 2 are actually present in Defendants' accused

dispenser.  Based on the above photos from the complaint and the description in the Easypack®

GeoTerra™ manual, the accused product does not appear to use a single "rod" to "mount[]" the

paper roll (Compl. Ex. B at 14), but rather two separate plastic "chucks" attached to each end

(Compl. Ex. E at 5.)  The term "rod member" in Claim 2 is written in the singular, and it is hard to

see how this could reasonably be construed to read on Defendants' product.  Further, the claim

includes a "pressing member" element that is "movable to apply a frictional resistance that inhibits

rotation of said core member," as well as a "manually adjusted member that is arranged to apply

a pressure against [a] spring such as to adjust the spring force applied by the spring against [the]

pressing member."  These elements are associated with separate components in the '009

Patent's diagrams (*see, e.g.*, Compl. Ex. B at 4 fig.1), but all of their functions appear to be

performed by a single component in the accused dispenser—the "friction side chuck" on the right

side of the device, which has a handle connected to a spring that can be twisted to adjust the

tension on the paper roll (*see* Compl. Ex. E at 5, 7–8).  It is possible for one component of an

accused device to satisfy more than one claim limitation, *Agri-Labs Holding LLC v. Taplogic, LLC*,

304 F. Supp. 3d 773, 794 (N.D. Ind. 2018) (citing *Gibbs v. Triumph Trap Co.*, 26 F.2d 312, 314

(2d Cir. 1928)), but reading all of these limitations into a single part is still a stretch—particularly

since the description of the "manually adjusted member" would seem to imply that it must be

separate from the "pressing member."  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,

616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear

implication of the claim language is that those elements are distinct components of the patented

invention.") (citation and internal quotation marks omitted).

These, however, are ultimately issues of claim construction—which, as already noted, is

rarely appropriate at the motion-to-dismiss stage.  *Nalco*, 883 F.3d at 1349–50.  Only when a

complaint contains allegations that "render[] [the plaintiff's] infringement claim not even possible,

much less plausible" will dismissal on this ground be warranted.  *Bot M8*, 4 F.4th at 1354 (finding

that plaintiff's first amended complaint "pleaded itself out of court" where the asserted claim

"require[d] that the game program and authentication program be stored together, separately from the motherboard," but the complaint alleged that the authentication program was located "on the [device's] motherboard itself"); *see also Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 778–79 (N.D. Ill. 2016) (dismissing third amended complaint where plaintiff's case "depend[ed] on an unsustainable construction" of the asserted claims that rendered "any [further] amendment . . . futile")*, aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017).

The parties in this case have not yet substantively briefed these interpretive questions. Plaintiff's complaint may require a strained reading of several terms in the '009 Patent, but Defendant has not yet "shown that [Plaintiff] has contradicted itself or that its []claims depend on a claim construction that is untenable as a matter of law." *EZ STAK,* 2018 WL 2933603, at *3. The court notes, further, that in both *Bot M8* and *Atlas IP*, plaintiffs had already been given the chance to amend their complaints in order to satisfy the pleading standard and had failed to do so. Plaintiff here has not had that opportunity here and would under any circumstances be granted leave to amend.

Accordingly, Defendant's motion to dismiss Plaintiff's Count II for infringement of the '009 patent is denied. The parties are invited to request an early *Markman* hearing if this would promote resolution of resolve their dispute.

## CONCLUSION

Defendant's motion to dismiss [17] is denied. Defendant is directed to file its answer to the complaint on or before May 24, 2024. The parties are directed to submit a Report of Planning Meeting on June 7, 2024.

ENTER:

Dated: April 29, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

14